Brady Larsen (SB#276280)
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
925-849-5525
yesklaw@gmail.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| AARON BREWER and DELLA CHAMBERS BREWER,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; THE BANK OF NEW YORK MELLON as trustee for the WORLD SAVINGS REMIC TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 29; AND DOES 1-25 INCLUSIVE,<br><br>Defendants. | Case No.: 3:16-CV-02664-KAW<br><br>[The Honorable Kandis A. Westmore]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>Date: July 7, 2016<br>Time: 11:00 a.m. |

**Table of Contents**

I. INTRODUCTION ....................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................1

III. STANDARD OF REVIEW ..................................................................................................4

IV. DISCUSSION .......................................................................................................................5

    A. Plaintiffs Allege Sufficient Allegations To Support Their Declaratory Relief Claim Because They Allege Facts Showing That the Loan Documents Were Not Assigned With the Loan To the Securitized Trust Within Ninety Days of the Closing Date ..................................................................................................................5

    B. Plaintiffs Allege Sufficient Evidence To State A Claim For Violation of Cal. Civ. Code § 1558 Because It Became Impossible To Identify Holders of the Loan .........10

    C. Plaintiffs Allege Sufficient Evidence To State A Claim For Violation of RESPA Because Defendants Did Not Answer Any of Plaintiffs' Requests For Information ............................................................................................. 12

    D. Plaintiffs Allege Sufficient Facts To State A Claim For Violation of the Uniform Commercial Code Because Their Loan Is Subject To the UCC and Defendants Violated UCC 3-501 ........................................................................................ 15

    E. Plaintiffs Allege Sufficient Facts To State A Claim For Violation of Cal. Bus. & Prof. Code § 17200 Because They Have Alleged Multiple Predicate Unlawful Acts ..........................................................................................17

V. CONCLUSION ....................................................................................................................18

## Table of Authorities

**Cases:**

*Adams v. Madison Realty & Development*, 853 F.2d 163 (1988) .............................. 16

*Ashcroft v. Iqbal*, (2009) 129 U.S. 1937 ............................................................................ 4

*Bell Atlantic Corp. v. Twombly*, (2007) 550 U.S. 544 ...................................................... 4

*Glaski v. Bank of America, N.A.* (2013) 218 Cal.App.4th 1079 ................................ 5-10

*Saterbak v. JPMorgan Chase Bank, N.A.*, (2016) 245 Cal.App.4th 808 .................... 6, 8

*Yvanova v. New Century Mortgage Corporation*, S218973, Ct.App. 2/1 B247188 ...... 5-10

**Statutes:**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 17-18

Cal. Civ. Code § 1558 .............................................................................................. 10, 11, 17

Federal Rule of Civil Procedure § 12(b)(6) ...................................................................... 4

I.R.C. § 860(g) ..................................................................................................................... 5

Mortgage Servicing Act, 12 CFR § 1024.36 ........................................................ 2, 13, 14, 17

Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ..................................... 2, 12, 13, 17

UCC § 3-501 .................................................................................................................. 15-17

## I. INTRODUCTION

Plaintiffs AARON BREWER and DELLA CHAMBERS BREWER ("Plaintiffs") hereby oppose Defendants WELLS FARGO BANK, N.A. and THE NEW YORK BANK MELLON as trustee for the WORLD SAVINGS REMIC TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 29's Motion To Dismiss the Complaint.

## II. FACTUAL ALLEGATIONS

On March 12, 2007, Plaintiffs, as trustees of the Brewer Family Trust, dated October 9, 2011, entered into a loan agreement with World Savings Bank, FSB ("World Savings"). The loan consisted of a Deed of Trust ("DOT") and a Promissory Note ("Note") and was marked as Loan Number 0044961993. The DOT named World Savings as Lender and Beneficiary and named Golden West Savings Association Service Company ("GWSASC") as trustee. The DOT was recorded with the Alameda County Recorder's Office on March 30, 2007 as Document Number 2007111788. The DOT is a publicly searchable document.

On or before April 27, 2007, World Savings sold Plaintiffs' loan to a mortgage-backed securities trust. This trust was a real estate mortgage investment conduit (REMIC) trust and was set up under New York state law. The name of the REMIC trust to which Plaintiffs' DOT was sold is the WORLD SAVINGS REMIC TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 29 ("WSR 29 TRUST"). THE BANK OF NEW YORK MELLON, F.K.A. THE BANK OF NEW YORK ("BNYM") served as trustee for the WSR 29 TRUST. The Closing Date of the WSR 29 TRUST is April 27, 2007.

Once the Closing Date elapsed, REMIC law gave World Savings, the WSR 29 TRUST, and BNYM 90 days to fully arrange the transfer of the loan documents, the DOT and the Note,

into the REMIC trust. As of the present date, Alameda County records show no evidence of any transfer of either the DOT or the Note into the WSR 29 TRUST.

On May 19 2015, Plaintiffs sent WELLS FARGO their first Qualified Written Request & Debt Dispute Letter ("QWR"). The QWR informed WELLS FARGO that Plaintiffs wished to ascertain the holder of their DOT and Note pursuant to Real Estate Settlement Practices Act ("RESPA") § 2605(e). 12 U.S.C. § 2605(e). The QWR also asserted Plaintiffs' rights under Regulation X of the Mortgage Servicing Act, which is part of the Dodd-Frank Act. Pursuant to Regulation X, WELLS FARGO was required to provide Plaintiffs with information about the true holder of their loan within 10 days of the request. 12 CFR 1024.36(d)(ii)(2)(A).

WELLS FARGO was also required to respond to other specific requests within the QWR within 30 days. 12 CFR 1024.36(d)(ii)(2)(B) These requests for specific information included information relating to WELLS FARGO's servicing relationship to the loan, the custodian of the loan, any assignments of the loan, questions about suspense and unapplied account transactions, questions about late fees, and escrow analysis.

WELLS FARGO Executive Mortgage Specialist Terry Rains did not respond to Plaintiffs' first QWR until June 18, 2015. The response contained mixed messages about WELLS FARGO's willingness to cooperate with the QWR. While Mr. Rains superficially reassured Plaintiffs that WELLS FARGO was searching for responsive information, he simultaneously wrote that their request was too broad for WELLS FARGO to respond.

Having received no satisfactory response from WELLS FARGO, Plaintiffs issued a complaint with the Consumer Financial Protection Bureau. In a letter dated June 9, 2015, Leesa Whit-Potter, a WELLS FARGO Senior Vice President, acknowledged the CFPB's inquiry.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

On July 1, 2015, WELLS FARGO provided Plaintiffs with a copy of their Promissory Note in an attempt to pacify Plaintiffs' requests for information in the QWR. This Note contained a curious extra page, which distinguished it from the Note that Plaintiffs originally signed. The new version of the Note contained an allonge with two different signatures, one from WELLS FARGO and the other from World Savings. The World Savings signature was rubber-stamped with a label that said "CANCELLED". Also, while WELLS FARGO gave Plaintiffs a copy that made it look like WELLS FARGO's signature came first, there were visible hole punch marks on the right hand side of the copy. When the document is rotated to place the hole punch marks properly on the left side, World Savings' signature appears first.

On July 5, 2015, Plaintiffs sent WELLS FARGO a second QWR letter. Ms. Whitt-Potter acknowledged receipt of this request on July 7, 2015. Mr. Rains responded to this second QWR in a letter dated August 4, 2015. This letter stated that WELLS FARGO had sent a copy of the Note and refused to provide answers to any of the numerous other requests contained in the QWR.

On October 12, 2015, Linda Andrews, a Home Preservation Specialist for WELLS FARGO was assigned to Plaintiffs. This was confirmed in a letter sent by Ms. Andrews to Plaintiffs.

In October of 2015, WELLS FARGO began reviewing Plaintiffs for a loan modification. This was confirmed in letters, dated October 8, 2015, November 5, 2015 and November 11, 2015. The two November letters were sent by Ms. Andrews.

Pursuant to WELLS FARGO's instructions for loan modification applications, Plaintiffs have completed and submitted a Homeowner Assistance Form on October 29, 2015.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure § 12(b)(6), a Motion to Dismiss tests the ability of a complaint to allege facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, (2007) 550 U.S. 544, 557. A complaint that contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss. *Id*. A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, (2009) 129 U.S. 1937, 1949. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating whether a complaint meets this standard, the court is not required to assume the truth of Plaintiff's legal conclusions but must take Plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* At 1950.

## IV. DISCUSSION

**A. Plaintiffs Allege Sufficient Allegations To Support Their Declaratory Relief Claim Because They Allege Facts Showing That the Loan Documents Were Not Assigned With the Loan To the Securitized Trust Within Ninety Days of the Closing Date**

The WSR 29 TRUST is a real estate mortgage investment conduit ("REMIC") trust, which was set up under New York law. On or before April 27, 2007, World Savings sold Plaintiffs' loan to a mortgage-backed securities trust. The Closing Date of the WSR 29 TRUST is April 27, 2007.

Once the Closing Date elapsed, REMIC law gave World Savings, the WSR 29 TRUST, and BNYM 90 days to fully arrange the transfer of the loan documents, the DOT and the Note,

into the REMIC trust. As of the present date, Alameda County records show no evidence of any transfer of either the DOT or the Note into the WSR 29 TRUST.

In *Glaski v. Bank of America*, the Court of Appeal addressed the issue of whether Plaintiff's allegations of a post-closing date transfer of his deed of trust into a securitized trust was the type of defect that would render the transfer void, and not merely voidable. (2013) 218 Cal.App.4th 1079. The *Glaski* court noted that the trust's pooling and servicing agreement clearly established a closing date beyond which assignments and transfers to the trust would not be allowed and that the trust was also subject to the Internal Revenue Code ("I.R.C.") requirements imposed on REMIC trusts, which mandate that mortgages be transferred to a securitized trust within ninety (90) days from the date the trust was created. *Id.* at 1093, fn. 12; I.R.C. § 860G. As such, the *Glaski* court held that the belated assignment, which was attempted four years after the trust closed, was void as an act in contravention of the trust document and plaintiff alleged facts sufficient to state a wrongful foreclosure claim under the theory that the entity invoking the power of sale was not the holder of the trust. *Id.* at 1097. Just as in the present case, the *Glaski* decision turned on a trust that had been established under New York law.

The *Glaski* doctrine also provides Plaintiffs with standing to bring suit based on the PSA closing date because it rejected " the view that a borrower's challenge to an assignment *must fail* once it is determined that the borrower was not a party to, or third party beneficiary of, the assignment agreement." *Id.* Even though Plaintiffs may not be parties in privity to tbe PSA, they have a cause of action here because their loan has been transferred to it after the closing date.

A new decision from the Supreme Court of California upholds the wisdom of the *Glaski* doctrine. *Yvanova v. New Century Mortgage Corporation*, S218973, Ct.App. 2/1 B247188 , was filed February 18, 2016.  It establishes the pivotal importance of the residential loan note to

issues involving the authority, right and power to direct and enforce a deed of trust. *Yvanova* also resolves a long-standing split in decisions of the 4th and 5th Districts of California's Courts of Appeal.

In considering the issue, *Yvanova* held that "*Glaski* provides a more logical answer than *Jenkins*" and that the borrower does have standing to sue when "the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." *Yvanova v. New Century Mortgage Corporation*, S218973, Ct.App. 2/1 B247188. Thus, the *Yvanova* doctrine recognized that "*Glaski* was correct to hold a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust." *Id.*

Thus, Plaintiffs now have standing to challenge the failed transfer of their loan to the WSR 29 TRUST. Because *Glaski* has now been upheld, the failed transfer renders the loan documents void not voidable. For that reason, Plaintiffs request that the Court issue declaratory relief proclaiming that the loan became void and that Defendants have no claim against Plaintiffs' Property.

Defendants argue that Plaintiffs should not be able to use the *Yvanova* holding to support their claim because of the recent decision in *Saterbak v. v. JPMorgan Chase Bank, N.A.*. (2016) 245 Cal.App.4th 808. The *Saterbak* decision has been often cited along with the decisions in *Wells Fargo Bank, N.A. v. Erobobo* and *Rajamin v. JP Morgan Chase Bank, N.A.* to call into question whether deeds of trust improperly moved into securitized trusts should be considered void, as opposed to voidable, under New York state law. *See Wells Fargo Bank, N.A. v. Erobobo*, (N.Y. App. Div. 2015) 127 A.D.3d 1176*; Rajamin v. JP Morgan Chase Bank, N.A.*, (2d Cir. 2014) 757 F.3d 79. Here, a detailed analysis of the jurisprudence is warranted.

*Yvanova* affirmed the holding of *Glaski v. Bank of America* as far as it related to standing to sue, but left aside the question of whether a deed of trust transferred to a securitized trust after its closing date became void. Some have mistakenly assumed that *Erobobo* reversed *Yvanova* and *Glaski*, even though they take placed in completely separate state Supreme Courts. In reality, *Glaski* cannot be reversed by the *Erobobo* decision because it does not rely on matters of New York case law. From the very outset, *Glaski* was skeptical as to the extent it should be bound by New York case law. Instead, the *Glaski* court felt that the entire decision hinged on interpretation of the statute that governs all New York trusts: E.P.T.L. § 7-2-4. E.P.T.L. § 7-2-4 explicitly states that "every sale, conveyance or other act of the trustee in contravention of the trust. . . .is void," *Glaski* never purported to *rely* on any law outside of the New York trust statute. Insofar as *Glaski* cites the holding in *Erobobo*, it is only as part of its desire to join "those courts that have read the statute literally." *Glaski v. Bank of America*, (2013) 218 Cal.App.4th 1079. Thus, the 2013 reversal of *Erobobo* does not affect the validity of *Glaski*, nor does it undermine *Yvanova*'s own reliance on *Glaski*, because *Glaski* was never bound to *Erobobo*.

Moreover, even if *Glaski* had been explicitly bound to *Erobobo*, rather than simply endorsing its take on a piece of New York statutory law, Defendants' argument would still be unavailing because *Erobobo* was only reversed on procedural grounds. The reversal of *Erobobo* by the New York Supreme Court merely states that Erobobo had "waived the defense of lack of standing".

The *Erobobo* holding's one substantive holding had to do with standing, as the New York Supreme Court held that Erobobo did "not have standing to challenge. . . possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the PSA." *Wells Fargo Bank, N.A. v. Erobobo*, (N.Y. App. Div. 2015) 127 A.D.3d 1176. The

*Glaski* and *Yvanova* holdings do not require *Erobobo* or any other New York case to determine the matter of standing. *Yvanova* clearly holds that plaintiffs may have standing to challenge improper assignments under PSA's, provided that they can prove that the loan would have been rendered void, not voidable. Thus, the only question here is whether the improper assignment renders the loan void, as a matter of New York law. The *Erobobo* reversal is utterly silent on this matter, while E.P.T.L. § 7-2-4 speaks loudly and unequivocally.

*Saterbak v. JP Morgan Chase Bank, N.A.*, which Defendants cite for support in their motion, believes that *Glaski* relied on *Erobobo*. If that court meant that *Glaski* took persuasive guidance from *Erobobo* in interpreting E.P.T.L. literally, then this is true. However, if they meant that *Glaski* is bound to the *Erobobo* reversal, then that was a drastic misstatement of law. The crux of the analysis in *Saterbak*, however, is mostly concerned with the holding in *Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d Cir. 2014) 757 F.3d 79. *Saterbak* argues that, based on *Rajamin*, the improper assignment of a deed of trust to a securitized trust, should render it voidable instead of void.

The first problem with this, as stated above, is that the *Glaski* holding did not rely on any matter of New York case law to reach its holding. *Glaski* still stands, and part of its holding affirms the right of the California courts to interpret New York statutory law in cases where California properties have been assigned to New York trusts. *Glaski* rightly holds that E.P.T.L. 7-2-4 should be interpreted literally in order to achieve its desired effect. In any event, the statute is succinct and unambiguous in its assertion that any act of the trustee that runs counter to the trust is void. The word "voidable" appears nowhere in the language of the statute.

Moreover, *Rajamin* is more concerned with the matter of standing than with what makes a loan void, not voidable. The crux of *Rajamin*'s argument was that "only the intended

beneficiary of a private trust may enforce the terms of the trust." *Rajamin v. Deutsche Bank Nat'l Trust Co,* (2d Cir. 2014) 757 F.3d 79   Only after rejecting the plaintiff's case on that grounds does *Rajamin* state its belief that violation of E.P.T.L. § 7-2-4 does not render the deed of trust void as a matter of law. Thus, its analysis of E.P.T.L. is, for all practical purposes, mere dictum.

Even back when *Glaski* was first decided, it considered the analysis of courts around the country that felt the way the *Rajamin* court did. Nonetheless, *Glaski* asserted its right to "join those courts that have read the New York statute literally." Thus, *Rajamin* does not constitute a mandate to interpret E.P.T.L. § 7-2-4 in the same ambiguous manner that their holding envisions. In New York cases, where New York properties are in jeopardy, the New York courts are free to read needless and harmful ambiguity into straightforward New York statutes. However, in California, California courts have the right to interpret E.P.T.L. § 7-2-4 based on its clear statutory language and to afford California homeowners the protection that the statute was obviously intended to provide.

In conclusion, *Yvanova* affirms *Glaski* and gives plaintiffs standing to sue if they can show that their deeds of trust became void, not voidable. The *Rajamin* holding and the reversal of *Erobobo* do not invalidate *Glaski*'s reliance on E.P.T.L. 7-2-4.The Court should follow *Glaski* in holding that E.P.T.L. § 7-2-4 unambiguously renders a deed of trust void if it violates the terms of the securitized trust to which it is transferred.

Thus, for the aforementioned reasons, *Glaski*'s interpretation of New York statutory law still stands, which means that post-closing date transfers render the loan void, not voidable. Because the loan became void, not voidable, the *Yvanova* doctrine gives Plaintiffs standing to sue for declaratory relief.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

9

It should also be noted that, just as the *Glaski* doctrine provides a separate and independent reason for declaring the DOT void, it provides a separate and independent reason for excusing Plaintiffs from the tender rule. *Lona v. Citibank, N.A.*, (2011) 202 Cal. App. 4th 89. Thus, if the Court finds that the DOT is void under the *Glaski* doctrine, Plaintiffs must be able to bring any and all of their claims without alleging tender.

Thus, Plaintiffs have alleged facts sufficient in their declaratory relief claim to raise a right of relief beyond a speculative level. For that reason, the Court should deny Defendants' Motion To Dismiss as to the declaratory relief claim.

### B. Plaintiffs Allege Sufficient Evidence To State A Claim For Violation of Cal. Civ. Code § 1558 Because It Became Impossible To Identify Holders of the Loan

To reiterate the facts that give rise to Plaintiffs' alternative claim for violation of Cal. Civ. Code § 1558, World Savings sold away its interest in Plaintiffs' loan in April of 2007, where it shortly was transferred to the WSR 29 TRUST. Thus, it stands to reason that the DOT would still be in the possession of the WSR 29 TRUST and BNYM. However, WELLS FARGO has spent years asserting an interest as beneficiary and servicer to Plaintiffs' loan, as a successor in interest to World Savings. World Savings has not been a party to this loan since it sold it to the WSR 29 TRUST in April of 2007 and there are no documents showing that the loan was sold, assigned, or transferred back to World Savings or WELLS FARGO by BNYM. For that reason, if WELLS FARGO truly holds an interest in Plaintiffs' loan, it is impossible to determine at what time they took over that beneficial interest from the WSR 29 TRUST. Between 2007 and 2015, when Plaintiffs were engaged in correspondence with WELLS FARGO, there must have been some time when WELLS FARGO took over the loan. However, it is impossible to identify when that took place.

In trying to argue against the application of Cal. Civ. Code § 1558 to this case, Defendants actually help to make Plaintiffs' argument for them. They state that it is not impossible to determine when the indorsement was made but readily admit there is no date showing when the indorsement was made. Apparently, Defendants believe that simply saying WELLS FARGO retook possession of the loan at *some time* between 2007 and 2015 is enough certainty for them. This is absolutely not enough certainty to satisfy Cal. Civ. Code § 1558, and it should not be enough to satisfy the Court. For all practical purposes, this means that there is an undefinable period of time where nobody at present has any idea who held the loan. If this is information that Defendants themselves possess, it is baffling that they would refuse to divulge it. In withholding such information, Defendants only add fuel to Plaintiffs' assertion that parties to the loan became unidentifiable between 2007 and 2015.

Thus, Plaintiffs have alleged sufficient facts to state a claim for declaratory relief that the loan became void under Cal. Civ. Code § 1558. For that reason, Plaintiff ask that the Court deny Defendants' Motion To Dismiss as to the Cal. Civ. Code § 1558 declaratory relief claim.

### C. **Plaintiffs Allege Sufficient Evidence To State A Claim For Violation of RESPA Because Defendants Did Not Answer Any of Plaintiffs' Requests For Information**

The Real Estate Settlement Procedures Act permits individuals to bring private rights of action that fall under Section 6 of the statute. The portion of RESPA dealing with qualified written requests for information relating to the holder of beneficial interest, codified as 12 U.S.C. § 2605(e), falls under Section 6 of RESPA. Thus, Plaintiffs have standing to bring a private right of action for violation of this statute.

Defendants' defense of their request to dismiss the RESPA claim is to simply fall back on the same refrain: that the requests for information were too broad. In reality, Plaintiffs sought a simple answer to a simple question. They wanted to know who held ownership of their loan documents.

Either not wishing to let Plaintiffs know the details of the loan's possession, or not wishing to give away that it the DOT and Note had never been properly transferred to the WSR 29 TRUST, Defendants twice denied Plaintiffs. It is unclear to this day how a request to know the owner of one's loan is in any way too broad. Nothing in Defendants' denials ever explained how such a simple request for information could be interpreted as ambiguous and unduly burdensome.

The only response Plaintiffs ever received in response to their QWR's was a doctored copy of their Note. Unlike the Note in Plaintiffs' possession, Defendants provided a copy with an allonge that Plaintiffs had never seen before. This allonge bears two undated signatures from World Savings and from WELLS FARGO. World Savings' signature is marked as cancelled. The allonge also contains hold punch marks, which show that the names are being presented in a different order than when they were first affixed to the Note.

In order to argue that they were incapable of telling Plaintiffs who held ownership of their loan, Defendants ambiguously argue that the document Plaintiffs sent was "a tome". While Plaintiffs had a number of questions that they wanted answered, Plaintiffs maintained impeccable organization of those questions. Thus, even if Defendants felt there were questions that were confusing, there is no reason that they could not have answered the simple questions, such as those relating to loan ownership. Instead, Defendant conveniently turned to an arbitrary standard of overbroadness to shield themselves from having to comply with RESPA.

In reality, Plaintiffs have pled more than enough factually to state a claim of relief for violation of RESPA. If Defendants wish to demonstrate what they think makes a request overbroad, and where the line of such a determination lies, they should at least have to do so in court. This seems not a matter to allege in a motion to dismiss, but rather a highly detailed matter of factual analysis. Thus, the Court should deny Defendants' Motion To Dismiss as to the RESPA claim.

### C. Plaintiffs Allege Sufficient Evidence To State A Claim For Violation of the Mortgage Servicing Act Because Defendants Did Not Answer Any of Plaintiffs' Requests For Information

Regulation X of the Mortgage Servicing Act also imposes response requirements for QWR's. In fact, while RESPA grants Defendants thirty days to respond, Regulation X requires Defendants to respond within ten days of receiving the QWR. 12 CFR § 1024.36(d)(ii)(2)(A). Borrowers can bring a private right of action under Regulation X, pursuant to § 2605(e).

Unsurprisingly, Defendants' argument for dismissing the Regulation X claim is premised on identical grounds as their argument for dismissing the RESPA claim. They once again insist that they could not have answered Plaintiffs' questions as to the ownership of the loan because the overall request was too broad. We reiterate here that Plaintiffs' requests were meticulously itemized and that the responsible and legal response would have been for Defendants to answer those questions that did not confuse them. But of course, the "overbroad" defense was actually a blanket method for refusing to respond to any of Plaintiffs' questions.

Plaintiffs have been damaged by Defendants' refusal to comply with Regulation X because they continue to be unable to determine the true owner of their loan. The result of this is

that Plaintiffs' Property is significantly encumbered and they continue to incur attorneys fees and court costs.

As they do in their argument against the RESPA claim, Defendants state that Plaintiffs' requests were "unquestionably overbroad". It behooves them to use the word "unquestionable" because a motion to dismiss requires the defense to successfully show that no facts have been sufficiently pled to show a right of relief. In reality, there is very much a question as to whether Plaintiffs' QWR's were overbroad or whether, based on the itemization of the request, Defendants could not have made a good faith effort to at least provide some answer.

Thus, because Plaintiffs have alleged facts sufficient to show a right of relief, the Court should deny Defendants' Motion To Dismiss as to the Regulation X claim.

### D. **Plaintiffs Allege Sufficient Facts To State A Claim For Violation of the Uniform Commercial Code Because Their Loan Is Subject To the UCC and Defendants Violated UCC 3-501**

The Uniform Commercial Code ("UCC") governs commercial transactions throughout this country, and certain provisions are applicable to mortgages. UCC § 3-501 states that, when a party makes a demand of a borrower under a mortgage, the borrower is entitled to demand that the party prove their right to make the presentment. Upon demand, this party must present the instrument and give "reasonable evidence of authority" to demand payment upon the instrument. UCC § 3-501. In this case, Plaintiffs made such requests through their two QWR's, asking detailed questions as to the identity of the current loan holder.

Defendants argue that the UCC should not apply here because the nonjudicial foreclosure scheme is exhaustive. However, California's law of nonjudicial foreclosure has no place in this dispute because no foreclosure has taken place. Plaintiffs' desire to determine the true holder of their loan is not about foreclosure but about determining who has the right to payment under the loan.

Defendants' reliance on case law grown from the nonjudicial foreclosure arena is not relevant here, and definitely does not bar application of California's UCC in this judicial proceeding. In fact, a determination that California law forces application of its nonjudicial foreclosure law into a situation where it should not apply violates Plaintiffs' constitutional right to due process and equal protection. § 1 of 14th Amendment of U.S. Constitution and Section 1 of Article 1 of California Constitution. Such a holding would also implicate an illegal taking of Plaintiffs' Property by not affording them the right to a determination of Defendants' rights to the loan. The facts of this case dictate a full evidentiary adjudication which does not trigger California's nonjudicial foreclosure process or the strained interpretations under that law that suggest borrowers have no rights when a person merely claims a right to payment under a person's loan. Affording Plaintiffs the right to protect their property and treating them equally with Defendants is consistent with the facts before this Court and the laws of the United States.

Finally, the danger of allowing Defendants to forego proving they hold the Note is very real and concrete. Plaintiffs suffer actual negative effects from alleged changes in the person to whom the alleged debt is owed. Plaintiffs' circumstance is vastly different should they voluntarily or involuntarily pay the wrong person. § 3602(a) Com holds that borrowers only get credit for payments on a debt if the payment is made to the person entitled to enforce the note. This provision protects the person actually entitled to enforce and leaves the borrower's liable

should their payments or collateral value be taken by a person not entitled to enforce the Note. The borrower is not relieved of this liability by a court ruling that the wrong person has the right to enforce the note or to foreclose. Plaintiffs suffer very real injury if their payments or home are lost to a person not entitled to enforce the Note, because they would still owe the true holder of the Note.  See also *Adams v. Madison Realty & Development*, 853 F.2d 163 (1988) ("Until the maker pays a holder, he will not be discharged from his obligation. Thus, "if the primary party pays an instrument bearing an improper indorsement, he will not have paid a holder, and the true owner of the instrument may recover against the primary party." See Richard M. Alderman, <u>A Transactional Guide to the Uniform Commercial Code</u> (2d ed. 1983).  From the maker's standpoint, therefore, it becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide makers with a recognizable interest in demanding proof of the chain of title. Consequently, Plaintiffs here, as makers of the Note, may properly press Defendants to establish holder status.

  Defendants have not only failed to answer QWR's regarding the ownership of the loan, but they have also submitted suspicious documentation to Plaintiffs, such as the allonge with two different signatures. Plaintiffs have a concrete and just reason for asking proof of ownership under the UCC, and Defendants' consistent efforts to withhold that information from Plaintiffs only throws the merits of their UCC claim into starker relief.

  Thus, Plaintiffs have alleged facts sufficient to state a claim of right under the UCC. For that reason, Plaintiffs asks that the Court deny Defendants' Motion To Dismiss as to the UCC § 3-501 claim.

### E. Plaintiffs Allege Sufficient Facts To State A Claim For Violaiton of Cal. Bus. & Prof. Code § 17200 Because They Have Alleged Multiple Predicate Unlawful Acts

Defendants claim that California Business & Professions Code § 17200 does not apply because there is no predicate act upon which it can rest. They base this argument on their belief that none of Plaintiff's claims will survive demurrer. If any of them do, that will necessarily provide a predicate act, all of which have been alleged by Plaintiff for purposes of this claim. Contrary to what Defendants believe, Plaintiff has alleged predicate acts for violation of Cal. Civ. Code § 1558, violation of RESPA, violation of the Mortgage Servicing Act, and violation of the UCC.

Thus, Plaintiffs have alleged facts sufficient to state a claim of right for violation of Cal. Bus. & Prof. Code § 17200. For that reason, the Court should deny Defendants' Motion To Dismiss as to this claim.

## V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion To Dismiss, either in part or in its entirety.

Dated: June 7, 2016                        __/s/ Brady Larsen_____

                                                  Brady Larsen (SB#276280)
                                                  Yesk Law
                                                  Attorney for Plaintiffs